The court is calling case number 424-0762, State of Illinois v. Huff. And I'd like to begin by asking counsel to please state your appearances, starting with the appellant. Good afternoon, Mr. Dana Huff. Manuela Hernandez from the Office of the State Appellate Defender. Thank you, Ms. Hernandez. And for the state? My name is Lindsey. I'm a 7-1-1 student representing the state. All right. Thank you. David Robinson, supervising 7-1-1 student. Thank you. You may proceed, counsel. Thank you. I may please the court. Again, my name is Manuela Hernandez. I represent Mr. Dana Huff. And Mr. Huff is asking that this court reverse his conviction for unlawful possession of a weapon by a felon because the statute violates the Second Amendment of the United States Constitution. I would like to first briefly address the state's argument regarding Mr. Huff's waiver of this claim. The state claims that this court cannot address his constitutional claim because he failed to satisfy the requirements of Rule 604D, basically that he didn't file a motion to withdraw his guilty plea. However, it is clear that the Illinois Supreme Court in NREA-NG determined that procedural restraints do not prevent an individual from challenging a charging statute in any proceeding as long as the court has jurisdiction. This is based on numerous Supreme Court, U.S. Supreme Court cases, including Class v. United States, where the defendant in that case did, in fact, plead guilty, waived his right to appeal, and was able to challenge the constitutionality of the charging statute. Also, this court has, in numerous occasions, entertained this claim where the defendant pleaded guilty and did not satisfy Rule 604D. Counsel, if I may, in Class, the court also determined that the federal rule was not an exclusive mechanism by which to preserve that right. Is there anything different with regards to the Supreme Court's Rule 604D that would make that the exclusive or non-exclusive remedy to challenge this claim? Well, I think that based on the Illinois Supreme Court decision in NREA-NG, this particular type of claim, I mean, there's other claims that are, in fact, waived if there's no satisfaction of Rule 604D. However, this very specific claim, because it deals with the power of the state to actually prosecute someone, it is a claim that is not waived, even if Rule 604D is not satisfied. The way I understood the argument is that, alternatively, the state claims that this court has no jurisdiction. However, Rule 604D is not what bests this court with jurisdiction. Rule 606A states that no step in the perfection of the appeal, other than the filing of the Notice of Appeal, is jurisdictional. So this court does have jurisdiction to address this claim. Now, moving on to the substance of this challenge. This court has numerous times held that the unlawful possession of a weapon by a felon is not unconstitutional because, on its face, because felons are, by definition, not law-abiding citizens, therefore not part of the people, and will never be presumptively protected by the Second Amendment. Now, I'm going to ask that this court reconsider its decisions in light of Rahimi, and I know that this court has considered Rahimi in another order. However, respectfully, this court's assessment of the impact of Rahimi on the original decision in Burns overlooked certain aspects of Rahimi. First, I would like to say that the Second Amendment is about the right, the individual right, to protect your home, to protect your family, and to protect yourself. And a gun is the quintessential self-defense weapon. In Rahimi, it is also important to note that the defendant in that case was not a law-abiding citizen, and if you look at the Fifth Circuit's decision, he, in fact, was convicted of crimes. That was not an issue in the Supreme Court case because the statute he was convicted of did not deal with his status as a felon. However, he was certainly not a law-abiding citizen. Now, the court's support for its holding in Burns, which addressed also the holding in Baker from the First District, is that the language in Bruin and Heller shows that the Second Amendment only refers to law-abiding citizens. And this is because Heller and Bruin states law-abiding citizens several times in both opinions. Well, they do more than that, don't they? It says that nothing in their decisions would change the long-established disqualification or ability of the state to disqualify gun ownership by felon. So their words were clear. The words were clear, however, they were not material to the outcome in those cases, and I would argue that Rahimi, in fact, gives us a different understanding of the concept of the people. In Heller, not only did the court talk about law-abiding citizens, but it actually gave a definition of who is the people in the Second Amendment. And the court said that it refers to all members of the political community, not an unspecified subset. And I would argue that felons, once they have served their sentence, they are members of our political community. And the court in Heller also cited another Supreme Court case, an older case, U.S. v. Verdugo Urquidez. And in that case, the court addressed whether a defendant, who was a Mexican citizen, who was apprehended in Mexico, had Fourth Amendment rights and was encompassed by what we consider the people. And Mr. Verdugo Urquidez was a felon. He had already been convicted. But the court never considered that. The court talked about how the people is a member, whomever is a member of our political community, and because the defendant in that case was not a member of a political community, he was not encompassed by the people. But the fact that he was a felon really didn't have any bearing on whether or not he was part of the people. And in thinking about that with respect to the Fourth Amendment, we can also see in the First Amendment the use of the people. And when someone has served their sentence, is a free citizen, they have full Fourth Amendment rights and full First Amendment rights. So the Supreme Court hasn't decided this issue, right? The Supreme Court has not decided whether the state may prohibit a felon from possessing a firearm. What we have, what the state here relies on, is the Supreme Court's words that we've already discussed, unequivocally saying that that's still permitted. So you're correct that it's sort of dicta because that wasn't the issue in the case. But by the same token, what you're asking us to employ is a rationale that the Supreme Court hasn't yet applied to felons in possession, which is doing the historical analysis from a standpoint of presuming that the defendant has a right to possess a weapon, unless that analysis proves otherwise. So here's what I'm going to ask you, and I'll ask the state the same. When the Supreme Court hasn't answered it, why would we choose between the Supreme Court's dicta statement, its analysis that doesn't address this issue, as opposed to just sticking with our own precedent? Well, Your Honor, first because although the Supreme Court did say those words, the context of the decision in Heller and Bruin and the decision in Rahimi shows us that this language of law-abiding citizens, responsible citizens, is not what determines whether an individual is part of the people. Now, we're not arguing that felons could never be prohibited from possessing a weapon. But this is a facial challenge, so maybe you are. Well, I mean, I think that we have to look at the why and the how. But not the case, not the specific case, right? Because with a facial challenge, you've got to be able to show to us that there is no proper basis for ever prohibiting a felon from possessing a weapon. That's correct, Your Honor. And the how and the why doesn't apply to the particular individual. It applies to the statute, how it creates that prohibition and why it's creating that prohibition. So the first part of my argument is that this Court should reject its finding that felons are not protected by the Second Amendment. Felons, after they are done with their sentence, they've paid their debts to society, they are free citizens, they are part of our political community, and they are protected by the Second Amendment. And that is how we move to the second step of the Bruin test. And so the state here basically relies on the decision in Brooks, which actually did an analysis specifically, I think it was the unhabitual criminal statute, not specifically this statute, but did an analysis about whether or not we can prohibit felons from possessing a gun permanently. And I ask that this Court reject those findings. So the first thing that the Brooks Court spoke about was the status phase restrictions and how during the founding era and at other times, the legislatures had been able to restrict certain groups of people from possessing a gun, say Catholics or whatever it may be. However, this analysis was specifically rejected by Bruin because it would allow the legislature to determine who is protected and who is not protected by the Second Amendment. In Bruin specifically, the New York... Counsel, how can you... You're asking us to conclude that the Supreme Court gave us an analysis that it then explicitly contradicted. By stating multiple times that none of their analysis of the Second Amendment would overturn a felon in possession statutes. So it's hard for us to have that cognitive dissonance, to understand how you can ask us to say this is what the analysis means when the Supreme Court said this conclusion is the right conclusion. Well, interestingly, I would say that I had the same reaction when the Rahimi case came down. On the one hand, the U.S. Supreme Court had been talking about law-abiding citizens, responsible citizens, saying it over and over again, even in the Bruin decision. And lo and behold, here comes an individual who by all means is not a law-abiding citizen, is using the gun in a violent way. And the court determines, goes through the analysis, implying that he, Mr. Rahimi, who was basically thought to be going to kill his girlfriend, is in fact protected by the Second Amendment. So, I mean, this line of cases is not as congruent as we would like. But the latest case, which is Rahimi, tells us that the Second Amendment applies to everybody that is part of our political community. And that the court must go through this Bruin analysis, this historical analysis, in order to determine whether a prohibition in the possession of weapons, in this case a permanent prohibition, is constitutional. So in moving on with this historical test, so again, the Bruin court said that the state cannot determine, for example, that New York City was a sensitive place in order to prohibit individuals from possessing a gun. And I mention this because it is the legislature that determines what is a felony and who becomes a felon if they're in violation of the statute. And this is not what the Second Amendment was meant to do. Well, but that would become not a facial issue, right, if we were to say that the state has classified something as a felon, which is traditionally at odds with how that definition has been applied in American jurisprudence over the years. And if they said that jaywalking is a felony and then use that as a basis to keep somebody from going to their firearm, we might look at that case differently. But again, facial challenge. So we're talking about John Wayne Gacy as much as we're talking about a jaywalker. That is correct, and this is because the statute doesn't make a difference at all. The statute doesn't say only violent felonies or whether the individual, the felony that the individual was convicted of, had implicated a firearm in any way. It applies the same to every person, regardless of what felony they were convicted of. But more directly here, you've got to make the case that even for the worst of them, they wouldn't be protected. And even for the worst of them, Your Honor, because, again, as I mentioned, Bruin gave us a metric on how to evaluate these statutes. It said why, and it said how. There is no historical precedent for a permanent ban, a permanent restriction on the possession of firearms. Again, is that the issue here? Because your client has only had a short ban, right? It is permanent. But it seems more factual than a facial challenge would permit to have us looking at the length of the ban. Well, I think it goes to the how, and this is the way the Bruin court said we have to analyze these statutes. I mean, a permanent ban is a permanent ban, and you are preventing an individual who is a free citizen from protecting himself, his family, his home with a quintessential weapon, which is a gun. And that is unprecedented, and it's not allowed by the Second Amendment. How does your client get to raise that argument? Because if it were a ten-year ban, if it were a five-year ban, he'd still be within it. So how do you raise a facial challenge, basically trying to stand in the shoes of somebody who has a very long ban? You mean, well, I'm sorry, but I don't understand that question very well. The facts of this case are that he has been banned for a short time, and you want to invoke the image of people who have been banned for a long time in support of your position, which seems at odds with a facial challenge. Well, simply because it's only been a few years, or I'm not sure exactly how many years have passed, doesn't make this less of a permanent ban. And I don't see how, as time goes on, one gets the opportunity more than the other person to raise a facial challenge to a statute that is permanently preventing this person from possessing a gun. And it's not just that. It's the fact that this is criminalized, and he served a sentence because of this. So I don't see how the fact that someone has been a felon for four years versus a person who's been a felon for 20 years gives him less of an opportunity to make a facial challenge where we all know that this is going to be a permanent ban. Now, I want to continue with what the Brooks Court, the analysis that the Brooks Court made, in addition to the status-based restrictions, which, importantly, it was about posing a danger, but not posing a danger or not trusted to follow the law as individual actors, but as a collective. And this is not a problem that we have with felons. And what I mean by that is that those laws were meant to prevent insurrections, what these people could do as a group because they opposed the government. And I don't see any reason why we would think the same of felons. The ability to punish with disarmament was also another type of law that was cited by the Brooks Court. But unless someone is sentenced to death or to life in prison, once the person has served their sentence, their rights, their First Amendment right, their Fourth Amendment right, are reinstated. And even when we talk about the forfeiture laws that allow forfeiture as part of a sentence, the Bruin Court actually talked about this and said that even in those cases, the person, after forfeiture, would be able to obtain a gun. So it was not a permanent ban. And a third reason given by the Brooks Court was that the right to bear arms was inextricably tied to the concept of virtuous citizenry. And I think that this was completely rejected by Rahimi. Certainly Rahimi, as I stated, was not a virtuous citizen, not a law-abiding citizen. However, the court did not find that he was not protected by the Second Amendment and also narrowed its decision to say that the law was constitutional because it was not a permanent ban. It was just a two-year ban. So other than the... I see that my time is up, but I'm just going to conclude very quickly. Other than the reasoning in Brooks, the state has not presented any other evidence or a founding-era analog that would support the constitutionality of this permanent ban on gun possession for convicted felons. Thus, the state has failed to satisfy its burden, and I ask that this court find Section 24-1.1 of the Criminal Code unconstitutional and vacate my client's conviction. Thank you, Mr. Hernandez. Ms. Aden? May it please the Court, Counsel, my name is Lindsay Aden, and I am a 711 student representing the state of Illinois. This appeal arises pursuant to defendants' claim Illinois' unlawful possession of a weapon by a felon statute is unconstitutional on its face. Prior to this appeal, defendant filed a pro se motion for notice of appeal without first filing a motion to withdraw his guilty plea pursuant to Illinois Supreme Court Rule 604D. First, under Illinois Supreme Court Rule 604D in People v. Flowers, this court should not address the merits of the present case, and this appeal should be dismissed. For this court to disagree and wish to address the merits of this case under the history and tradition test set forth in Burden, Illinois' unlawful possession of a weapon by a felon statute is constitutional. Here, defendant entered into a fully negotiated plea for a charge of unlawful possession of a weapon by a felon. The state bound itself to a specific sentence for a defendant of 2 1⁄2 years in the Department of Corrections, where the maximum term of imprisonment was 10 years. As noted, defendant then filed a pro se motion for notice of appeal, which was filed 18 days after defendant's guilty plea was entered. At no point did defendant or his attorney file the required motion to withdraw his guilty plea pursuant to Rule 604D. The Illinois Supreme Court in People v. Flowers addressed the requirements and application of Rule 604D. In Flowers, the court clearly stated in every case there must be a motion, and it must be filed within the 30-day period specified by the rule. Further, while the discovery that a defendant has failed to file a timely 604D motion does not deprive the appellate court of jurisdiction, this failure does preclude the appellate court from considering the appeal on the merits. Where a defendant has failed to file a written motion to withdraw his plea of guilty, the appellate court must dismiss the appeal, leaving the Post-Conviction Hearing Act as the defendant's recourse. Does this rule apply when the statute under which the defendant is convicted may be invalid? Your Honor, I would say that it does apply in the present case. In the Enri, N.G. case that opposing counsel cites, in that case the court determined that defendant did not waive his constitutional claim. The state did not disagree. Defendant in this case retains his constitutional claim. He just must bring it in a court following all of the rules in a court that is able to address the merits. Additionally, in the Enri, N.G. case, I believe the overarching statute was based on three underlying charges, and one of those was no longer a conviction. And so they were addressing the overarching issue that one of the underlying issues was no longer a valid conviction. And so I would say that is very distinguishable from this case, where there's no question about the underlying charge that the Felony Possession Statute Commission is based on. Counsel, if I may, though, but in that particular instance, the Supreme Court had spoken on that issue. And in this particular case, we don't necessarily have that exact same situation. And so that's part one for you to address. And then part two, in People v. Guevara, how do you address the issue that the court said, defendant may argue that a criminal statute is unconstitutional and void ab initio at any time? Can you repeat your first question, Your Honor? Sure. So with regards to that, I guess, in distinguishing, in those prior instances, there was Supreme Court ruling that said, you know, under this particular subsection, they had ruled that was unconstitutional. And we don't, while we have our own precedent within the appellate court, as Justice Doherty pointed out with his questioning, that has not been addressed directly on point with the Supreme Court. Well, Your Honor, I would say that from what we have from the Supreme Court, the Wilt case and the Flowers case, it is pretty clear. In the Wilt case, prior to that, there was discrepancies at the appellate court. Some courts that were getting this issue were remanding it, some were dismissing it, and some were addressing the merits. And so the Supreme Court was trying to clarify what to do in that situation, in the Wilt case, when a Rule 604D motion is not properly filed. And so they said that this motion must be filed. In Flowers, they again addressed the issue and said, while it's not a jurisdictional issue, it is an issue of whether the court can address the merits and that the court is unable to do so, and the only ability the appellate court has is a dismissal. This prevents discrepancies at the appellate court and ensures that their rules are being followed. I do think, though, after Flowers was People v. Guerra, which is 216, and that was in 2005, and then NRENG was after that. They indicated once again, though, when it comes to a facial challenge, that that could be challenged at any time. So how are we to – it seems to me we can read those consistently by saying that while we do normally require, as you suggested, to be compliant with Flowers, the motion to withdraw, that this is an exception to that particular requirement. Well, Your Honor, I guess from my research, I would say the exception that I saw was largely when admonishments are not properly given at the trial court and when that is not followed. And so any other exception, I believe, the defendant would have to go through the Post-Conviction Hearing Act. And as we said, defendants still retain his constitutional claim in the present case. We do not argue that he has forfeited it or waived it in any way. It's just that he has to be in a court that can address the merits. And in this case, a dismissal would allow the defendant to bring his claim through the Post-Conviction Hearing Act in the proper manner. Isn't a claim that could have been brought in the original case waived in post-conviction proceedings if it's not brought there? Can you repeat that one more time? Sure. If he doesn't bring his constitutional claim here, doesn't the Post-Conviction Hearing Act anticipate that the original case is raised judicata as to any claim that was raised or could have been raised in those proceedings? So, Your Honor, I guess I would point to Wilk in that circumstance. In that case, there was not a 604D motion timely filed. And so when the court ultimately dismissed it, then they said that the defendant still retains the Post-Conviction Hearing Act availability. And also, the First District has applied both Flowers and Wilk in this way, and people be merry weather. And they determined whether a defendant's failure to file a motion required dismissal of the case. And ultimately, the court held we must dismiss the defendant's appeal for failing to comply with the mandates of Rule 604D. While dismissal is a harsh result, we find the harshness is lessened because the defendant is not barred from raising constitutional claims in a post-conviction petition pursuant to the Post-Conviction Hearing Act. Based on this case and Illinois Supreme Court's clarity in Wilk and Flowers, it is clear this court is unable to address the merits of this case given Rule 604D was not adhered to. Second, were this court to disagree and wish to address the merits of this case, under the history and tradition test set forth in Berlin, Illinois' unlawful possession of a weapon by a felon statute is constitutional. Defendant contends that Illinois' felon in possession statute is unconstitutional in its face because banning a person with felony convictions from carrying firearms is not consistent with the Second Amendment's text and historical understanding. The state argues defendant's challenge to the statute should be rejected. Given Supreme Court precedent in this court's recent cases, defendant is unable to establish that Section 24-1.1A is facially unconstitutional. In 2022, in Berlin, the U.S. Supreme Court set forth the test pertaining to the Second Amendment, and it is as follows. When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation. Given the Bruin test in Illinois' appellate court recent cases, it is clear Illinois' felon in possession statute is constitutional as defendant's conduct is not protected by the Second Amendment. In People v. Baker, the first district So is your position that we don't get into the historical analysis because a felon is not protected by the Second Amendment? Your Honor, I would say that the state's position is that the state can win on either argument, but that based on this court's recent decisions, that not applying Bruin because felon is not protected is the best approach. In People v. Baker, the first district held Bruin didn't apply to felon defendants given they were not law-abiding citizens. Similarly, in People v. Robinson, the first district held felons are not and have historically not been categorically protected by the Second Amendment. This court in People v. Boyce adopted the Baker reasoning when it held that as a convicted felon, defendant was not protected by the Bruin test. So if, for instance, you have a speeding ticket for going 20 miles over the speed limit and the state of Illinois decides that is a basis to keep you from owning a firearm, that be consistent with the Second Amendment because you're not a law-abiding citizen? Your Honor, I would say that based on what we know from the Supreme Court, first we know that in their dicta, as you mentioned, that they have clearly stated multiple times, almost most of the justices at this point in a majority or in concurrence have said going back to Heller and McDonald and Bruin and Rohini that none of their rulings are putting felon in possession statutes in jeopardy. So I would first point to that. And then I would say where one wants to argue on the margins, on the law-abiding language, it's very understandable. But a speeding ticket being on this end and a felony being on this end, I would say that from what we know from the Supreme Court, it is very clear that felons fall into this category of people that aren't covered by the Bruin test. There's a saying out there that most of us commit a felony a day because there's so many of them and so few of them are known about and technical. Does it matter the felony or is felony by a class enough to say that those persons are outside of the protection of the Second Amendment? I would say based on what we know from the U.S. Supreme Court at this point, it does not matter what the felony is. The state has the latitude to establish through the legislature what matters are felonies and to enforce that. And so I would say based on what we know from the Supreme Court until this issue is potentially further clarified, that it does not matter. Further, in People Be Burned, this court found that Baker comports with Second Amendment jurisprudence and a felon defendant, by definition, is not a law-abiding citizen. Appellate courts across Illinois have consistently held Bruin does not apply to felons. Most recently, this court in Gardner considered a similar claim by a defendant arguing the unlawful possession of a firearm by a felon statute was unconstitutional. The Gardner analysis stated, for the reasons Abley, Stepforth, and Burns, we find that Bruin simply does not apply to defendant, who is a felon rather than a law-abiding citizen. Accordingly, defendant's facial challenge to the constitutionality of the statute fails, as does his challenge to the validity of his conviction. If the historical analysis is applied, what's your argument as to how it would support felon possession? Yes, Your Honor. Turning to the People Be Burned case that opposing counsel mentions, this opinion, I would say, is ultimately contrary to defendant's argument. The Brooks Court did hold that the defendant's possession of a firearm was presumptively constitutional. However, the court noted how the defendant's prior felony might impact his Second Amendment right to possess a firearm is more properly evaluated under the Second Step's historical tradition analysis. Indeed, the court does determine this felony is relevant at a later point in its analysis of American history and tradition. As it states, there is a historical tradition of legislatures exercising their discretion to impose restrictions disarming categories of persons who, based on their past conduct, were presumed unwilling to obey the law. Ultimately, the Brooks Court held the legislature's ability to impose restrictions disqualifying certain categories of people from possessing firearms is consistent with the national historical tradition of firearm regulation, and the armed habitual criminal statute in question was constitutional. So while the Brooks Court differed in applying the Bruin test to defendant, despite the fact he was a felon, it ultimately came to the conclusion that the statute was constitutional. The Third District and People Be Travis took a similar approach in determining the armed habitual criminal and unlawful use of a weapon by a felon statute were constitutional under the Second Step of Bruin. Thus, if this court is inclined to differ from its approach in Burns and Gardner and Boyce and instead follow Brooks or Travis, it is clear Illinois' Felon in Possession statute remains constitutional under either approach. Overall, defendants claim that Section 24-1.18 is unconstitutional, is unpersuasive both because Bruin doesn't apply to him as a felon and because the statute is consistent with American history and tradition pertaining to regulation of firearm ownership. For these reasons, the State asks that you dismiss the appeal, and were this court to disagree on the Rule 604D issue, affirm defendant's conviction. Thank you. Thank you. Thank you. First, with respect to the waiver of this constitutional claim, the State cites two flowers and two wilks. And this court noted that these are cases that were decided before NGE, before Class v. United States. Most likely, they would have been decided different. Oh, well, actually, no, because they wouldn't be decided differently, and this is what I was going to say. Flowers and wilks are not challenges to the constitutionality of the charging statute. And flowers, the claim was that the defendant had to pay restitution and that IDOC could not withhold, I believe, 50 percent of her prison income. And in wilks, it was, again, a sentencing issue where the defendants claimed that their sentences should not be consecutive, that they should be concurrent. So those cases are an opposite here. There was no claim of the unconstitutionality of the charging statute. Now, with respect to the substance here, I would like to quote two paragraphs, if I may, from the Heller decision. One is that a constitutional guarantee subject to future judges' assessment of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope that they were understood to have when the people adopted them, whether or not future legislatures or, yes, even future judges think the scope too broad. And I think that goes to this idea that the legislature is not the one that should be determining who is protected by the Second Amendment. And the second paragraph is that the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home. The Heller decision was about having a gun in the home. And this is what – this is the policy choice that has been made with respect to the statute, that someone is being permanently and absolutely prohibited from having a handgun, even in protection of himself, of his home, or of his family. And for those reasons, and what I stated before I asked that this Court vacate Mr. Huff's conviction as the statute he was charged with is unconstitutional. Thank you. All right. Thank you. I appreciate the arguments of counsel for both sides. We will now stand and recess and issue our decision due course.